Case 04-03661-bjh Doc 31 Filed 08/25/05 Entered 08/25/05 13:45:26 Page 1 of 17

U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

ENTERED
TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET

**The following constitutes the order of the Court.**

Signed August 25, 2005

United States Bankruptcy Judge

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| VENTURELINK HOLDINGS, INC., et al., | § | CASE NO. 02-80906-SAF-11 |
| | § | |
| Debtor. | § | |
| | § | |
| VENTURELINK HOLDINGS, INC., et al., | § | |
| | § | |
| Plaintiffs, | § | ADV. PRO. NO. 04-3661-SAF |
| - against - | § | |
| | § | |
| KIRKPATRICK & LOCKHART, LLP, | § | |
| | § | |
| Defendant. | § | |

### MEMORANDUM OPINION AND ORDER

Before the Court is a motion for summary judgment (the "Motion") filed by the Defendant, Kirkpatrick & Lockhart Nicholson Graham LLP f/k/a Kirkpatrick & Lockhart LLP ("K&L"). The Plaintiffs oppose the Motion. The Court has jurisdiction over this core proceeding and the Motion

in accordance with 28 U.S.C. §§ 1334 and 157(b).

The Court heard the Motion on August 3, 2005. This Memorandum Opinion and Order constitute the Court's findings of fact and conclusions of law with respect to the Motion.

At issue here is an alleged preference payment to K&L. While the Plaintiffs initially sought to avoid certain other transfers to K&L in this adversary proceeding, the Plaintiffs have stipulated that they will dismiss all other pled claims and that they seek only to avoid a $1,000,000 payment made to K&L on November 14, 2002 (the "Transfer"). It is undisputed that the Transfer was in the form of a $1,000,000 wire transfer directly to K&L from Pacific Electric Wire & Cable Co. Ltd. ("PEWC"), the Plaintiffs' ultimate parent company.

For the reasons explained more fully below, the Court concludes that the Motion should be denied in part and granted in part. In sum, the Court concludes that K&L has failed to establish an absence of evidence regarding the Plaintiffs' standing to bring this action, and that portion of the Motion should be denied. However, the Court further concludes that the Plaintiffs have failed to raise a genuine issue of material fact regarding the Plaintiffs' interest in the funds transferred to K&L by PEWC. Because the Plaintiffs have failed to raise a material issue of fact on an element of their preference claim, K&L is entitled to summary judgment in its favor.

I.  **Factual Background**

As relevant here, K&L served as legal counsel to Plaintiff Pacific USA Holdings Corporation ("PUSA") prior to its bankruptcy filing. PUSA wished to retain K&L as its bankruptcy counsel once it filed for relief under chapter 11 of the Bankruptcy Code. However, K&L was owed substantial amounts of legal fees by PUSA. If K&L was a prepetition creditor of PUSA, it would not be a "disinterested person," *see* 11 U.S.C. § 101(14), and it could not be retained as counsel for the soon-

to-be debtor, PUSA. So, a decision was made that K&L's legal fees would be paid so that it could serve as counsel to PUSA and the other affiliated companies (who are also plaintiffs in this adversary proceeding) in their impending chapter 11 cases. However, PUSA did not have the financial resources necessary to pay K&L's outstanding legal bills.

Accordingly, on November 14, 2002, some eighteen days prior to the Plaintiffs' bankruptcy filings on December 2, 2002, PEWC wire transferred $1,000,000 directly to K&L to pay PUSA's outstanding legal bills to K&L. PEWC booked the Transfer as a loan or advance to PUSA. Cheng deposition at p. 30:16-25. PUSA, having received no instruction from PEWC on how to account for the funds, booked the Transfer as "additional paid-in capital." McCraw deposition at p. 19:8-12. However, in connection with a 2002 year-end audit by outside accountants, the accounting between PUSA and PEWC was reconciled and the Transfer was booked as a loan to PUSA on PUSA's books.[1] *Id.* at p. 21:3-17.

---

[1]The Plaintiffs contend that an issue of fact precluding summary judgment exists regarding the proper characterization of the Transfer as a loan to PUSA or a capital infusion. The Court disagrees. While McCraw testified that he initially booked the Transfer as "additional paid-in capital," he admitted that he did so because he received no contemporaneous instructions from PEWC on how to book the Transfer. *See* McCraw deposition at pp. 20:4-7; 26:6-21. Moreover, McCraw testified that the "determining factor" as to whether the Transfer was a loan or a capital contribution was how PEWC recorded the Transfer on its books. *See id.* at p. 26:17-21. It is undisputed that PEWC booked the Transfer as a loan or advance to PUSA.

However, even if there is a question of fact regarding the proper characterization of the Transfer, it is not material to the disposition of the Motion. If the Transfer was a loan, the PUSA estate was not diminished, as one creditor, PEWC, was substituted for another creditor, K&L, and no preference occurred. *In re Heitkamp*, 137 F.3d 1087 (8th Cir. 1998); *Coral Petroleum, Inc. v. Banque Paribas-London*, 797 F.2d 1351, 1356 (5th Cir. 1986).

While the Court has been unable to find any cases addressing this issue, it stands to reason that the PUSA estate was not diminished if the Transfer was instead a capital contribution. In that event, an equity holder, PEWC, was substituted for a creditor, K&L. From the perspective of PUSA's other creditors, the substitution of an equity interest (in an insolvent company) for an unsecured claim is beneficial. Instead of K&L's competing $1,000,000 unsecured claim (to share pro rata in the recovery from PUSA's assets), PEWC's substituted equity interest would be junior to unsecured creditors and would not be legally entitled to share in recoveries until unsecured claims were paid in full or the unsecured creditors consented to equity's receipt of value on account of their interests. *See* 11 U.S.C. § 1129(b)(2)(B).

The Plaintiffs assert that if the transaction was a capital contribution, then the analysis set forth in *In re Interior Wood Prods. Co.*, 986 F.2d 228 (8th Cir. 1993) compels the conclusion that a preference has occurred. In *Interior Wood Products*, a purchaser of the debtor's assets assumed some of the debtor's liabilities as a component of

**Memorandum Opinion and Order**     **Page 3**

A joint plan of reorganization for the affiliated debtors was confirmed by this Court on November 18, 2004 (the "Plan"). The Plan went effective on November 24, 2004. Under the Plan, avoidance actions, including this preference action, vested in the Reorganized Debtors – *i.e.*, the Plaintiffs. *See* Plan at § 6.2.4. However, under certain circumstances, the Plaintiffs' prepetition general unsecured creditors have a right to be paid the balance of their Plan distributions from the net proceeds realized from the Plaintiffs' prosecution of avoidance actions. Specifically, the Plan provides that unsecured creditors can look to avoidance recoveries if "Cash from the Escrow Account is insufficient to make the Distributions required by [Section 4.10.1 of the Plan]." *See id.* at § 4.10.1.

## II. Contentions of the Parties

K&L seeks a summary judgment for either of two reasons. First, K&L contends that PUSA never had access to, discretion over, or control of the funds wire transferred from PEWC to K&L, and that PUSA could not have used these funds to pay its other creditors or to support its general operations. In the words of the Bankruptcy Code, K&L contends that the Transfer was not a transfer of an "interest of the debtor in property," 11 U.S.C. § 547(b), and thus, no preference could have occurred as a matter of law. Second, even if the Transfer was a transfer of an interest of PUSA in property, K&L contends that PUSA and the other Plaintiffs do not have standing to bring this action because any recovery will not benefit the debtors' estates as required by § 550(a) of the Bankruptcy

---

the purchase price, and paid one of the debtor's creditors directly. The trustee of the debtor's estate sought to recover that payment as a preference, arguing that the funds would have been available to satisfy the debtor's other creditors had the consideration for the assets been paid to the debtor instead. The court agreed, noting that the estate had been diminished because assets were sold, but the purchase price did not come into the estate and went instead to a third party.

   Similarly, the Plaintiffs assert that if the transaction between PEWC and PUSA is viewed as a capital contribution, then a portion of the "purchase price" for PUSA's equity went, in essence, to K&L instead of to PUSA. The analogy is unpersuasive, however, for two reasons. First, there is no evidence that any equity in fact went to PEWC in consideration for its arguable capital contribution. Second, even if it had, the estate would not have been diminished, because PUSA was clearly insolvent, and its stock presumptively worthless. In short, nothing of value left the estate.

**Memorandum Opinion and Order**                                                                                                  **Page 4**

Code.

In response, the Plaintiffs contend that they have raised genuine issues of material fact regarding (i) PUSA's access to, discretion over, or control of the funds paid by PEWC to K&L, and (ii) PUSA's ability to use the funds paid to K&L to pay PUSA's other creditors or to support its general operations. Thus, the Plaintiffs contend that there is a material question of fact regarding whether the Transfer was a transfer of an interest of PUSA in property. Moreover, the Plaintiffs contend that there is a genuine issue of material fact regarding who will benefit from any recovery realized from the successful prosecution of this action. Because the Plaintiffs' prepetition unsecured creditors have a right to look to avoidance recoveries for payment under certain circumstances, the Plaintiffs contend that they have standing to bring this action against K&L.

### III. Legal Standard

In general, summary judgment is proper if the summary judgment record shows that there is "no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(b); *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); *Abbott v. Equity Group, Inc.*, 2 F.3d 613, 619 (5th Cir. 1993). The summary judgment movant:

> [N]eed not support the motion with evidence negating the opponent's case; rather, once the movant establishes that there is an absence of evidence to support the non-movant's case, the burden is on the non-movant to make a showing sufficient to establish an issue of fact for each element as to which that party will have the burden of proof at trial.

*Epps v. NCNB Texas Nat'l Bank*, 838 F. Supp. 296, 299 (N.D. Tex.), *aff'd* 7 F.3d 44 (5th Cir. 1993) (citing *Celotox Corp. v. Catrett*, 477 U.S. 317, 322-25 (1986)). "[U]nsubstantiated assertions are not competent summary judgment evidence." *Abbott,* 2 F.3d at 619. The nonmoving party must "'come

forward with specific facts showing there is a genuine issue for trial' . . . [and] must do more than simply show some 'metaphysical doubt as to the material facts.'" *Epps,* 838 F. Supp. at 299 (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)).

## IV. Analysis

While the parties frame the legal issues a bit differently in their respective briefs, there is no real dispute over the legal issues raised by the Motion. However, since the Court is required to view the summary judgment evidence in the light most favorable to the party opposed to the Motion – *i.e.*, the Plaintiffs, the Court will analyze the legal and factual issues as the Plaintiffs have framed them. Each basis for summary judgment raised by K&L will be separately addressed.

### A. Who controlled the funds transferred to K&L?

The Plaintiffs characterize the legal and factual issues regarding control as follows:

> Defendant asserts that because the Transfer did not come from PUSA, or pass through PUSA's accounts, that as a matter of law, the payment cannot be preferential. While there is no dispute that the payment to Defendant was a wire transfer by PEWC, the inquiry does not end with that undisputed fact.
>
> The factual issue which is decisive when determining whether a payment is made from property of the estate is whether the debtor controls the disposition of the funds and designates the creditor to whom the monies will be paid independent of the third party whose funds are being used.

*See* Brief in Support of Plaintiffs' Response to Defendant's Motion for Summary Judgment ("Plaintiffs' Brief") at p. 4 (legal citations omitted). Thus, according to the Plaintiffs, this Court must determine whether a genuine issue of material fact is raised by the summary judgment evidence regarding PUSA's ability to control the disposition of the funds advanced by PEWC.

As relevant to this issue of control, K&L relies on the Declarations of Tom C.Y. Tung

("Tung"), President and Chairman of PEWC at the time of the Transfer,[2] and Jack Takacs ("Takacs"), CEO of PUSA at the time of the Transfer, in support of the Motion. Both declarations are brief and to the point. In short, both Takacs and Tung testify that: (i) PEWC paid $1,000,000 to K&L for legal work that K&L had performed on behalf of PUSA, (ii) the funds used to make the payment to K&L did not come from PUSA or an account controlled or owned by PUSA, (iii) the funds did not flow through PUSA or any account controlled by PUSA, and (iv) PUSA did not have control over the funds[3] or have the ability to cause them to be paid to another creditor of PUSA or to be used for PUSA's general purposes. *See* Tung Declaration at ¶¶ 2 &3; Takacs Declaration at ¶ 2. Tung also testified that "these funds were for the sole purpose of paying K&L and were not available to PUSA to pay PUSA's other creditors or to otherwise fund its operations." Tung Declaration at ¶ 4.

The Plaintiffs, in an effort to raise a genuine issue of material fact regarding PUSA's control over the funds (which admittedly belonged to PEWC), refer the Court to the deposition testimony of Michael McCraw ("McCraw"), PUSA's President and CFO at the time of the Transfer, and Andy Cheng ("Cheng"), PEWC's Executive Vice President and director at the time of the Transfer.

---

[2]Cheng testified that Tung was also Chairman of PUSA. *See* Cheng deposition at p. 18:1-4.

[3]While the Plaintiffs complain that this testimony is a legal conclusion, they cite no case law to support their complaint. *See* Plaintiffs' Brief at p. 6. It is true that legal conclusions contained in an affidavit are not competent summary judgment evidence. *Clark v. America's Favorite Chicken Co.*, 110 F.3d 295, 297 (5th Cir. 1997); *Prestenbach v.Chios Challenge Shipping & Trading, S.A.*, No. 03-3636, 2005 WL 517445 at *7 n.19 (E.D. La. Feb. 24, 2005). However, the determination of "control" of funds is one of fact, not one of law. *See, e.g., Port Side Transport, Inc. v. Van Huffel Tube Corp.*, 127 B.R. 165, 167 (N.D. Ohio 1989) (stating that the bankruptcy court's finding of "control"for § 547 purposes is reviewable under a "clearly erroneous" standard, which applies solely to findings of fact); *see also In re Clifford*, 255 B.R. 258 (D. Mass. 2000) (stating that trier of fact's determination of whether taxpayer had sufficient control over corporation to be deemed "responsible person" liable for unpaid withholding taxes is subject to "clear error" review). Control is a term within common understanding, and will be found to exist based on the existence of historical facts, such as the ability to access funds in an account. The legal conclusion which flows from a factual finding of "control" in this context is that there has been a transfer of an interest of the debtor in property within the meaning of 11 U.S.C. § 547.

Specifically, in the Plaintiffs' Brief, they summarize "the most important testimony" from McCraw, "which creates the material fact issue as to whether PEWC or PUSA, independently of PEWC, directed that Defendant be paid" as follows:

- Takacs, the CEO of PUSA, worked to arrange the funding;
- McCraw prepared a schedule of debts to be paid, which Takacs would then present to PEWC;
- The funding provided by PEWC was based on the schedule prepared by McCraw;
- Debtor had discretion to replace creditors on the schedule with other creditors if it desired;
- K&L worked with Takacs to arrange for payment of K&L's billings; and
- PEWC determined the allocation of payments based on recommendations from McCraw and Takacs and, to McCraw's knowledge, none of the "recommendations" were ever rejected.

*See* Plaintiffs' Brief at p. 5 (evidentiary citations omitted). After summarizing these key pieces of McCraw's testimony, the Plaintiffs conclude that "[t]hus, there is evidence from which the Court could conclude [that] PUSA prepared a list of creditors it wanted paid, took the list to PEWC, which uncritically paid those creditors 'earmarked' by PUSA and not PEWC." *Id*. The Plaintiffs further argue that "[i]t is irrelevant . . . that PEWC actually made the payment to Defendant . . . if the original instructions and designation of Defendant as a creditor to be paid came from PUSA via a schedule of accounts to be paid prepared by McCraw and directed by Takacs." *Id*. Finally, the Plaintiffs argue that "the fact that McCraw testified that the Debtor had discretion to pay other creditors than those on the schedule establishes a fact question as to PUSA's independence." *Id*.

If the summary judgment evidence actually established those facts, the Court would agree that a material question of fact would exist regarding PUSA's control over the disposition of the funds. However, a careful review of the entire McCraw deposition does not support the Plaintiffs' evidentiary contentions. For example, while McCraw did testify that PEWC paid expenses or debts

**Memorandum Opinion and Order**  **Page 8**

of PUSA from time to time, he characterized those payments as "infrequent." *See* McCraw deposition at p. 52:7-14. When asked whose decision it was to make the payments to PUSA's creditors, McCraw testified that he "believed"[4] that Takacs worked directly with Tung to arrange for the necessary funding, but concluded by stating that "I don't know any of the specifics about – you know, about it beyond that." *Id*. at p. 52:20-23. When asked if PUSA creditors approached PEWC directly for payment, McCraw testified that he "believed" that "some of our creditors did contact Tom [Tung] directly." *Id*. at p. 53:12-13. But, McCraw then testified that "[m]ore often than not it would be Jack [Takacs] approaching Tom [Tung] about funding that was needed." *Id*. at p. 53:13-15. It is in this context that McCraw testified that he "would prepare schedules that . . . listed [PUSA's] immediate cash needs . . . and then Jack [Takacs] worked with Tom [Tung] to arrange for the funding." *Id*. at p. 53:15-18. Regarding PUSA's "discretion" to substitute creditors from those on the funding schedule, McCraw actually testified that PUSA "desperately tried to . . . stick to the schedule. Now, if in the meantime another creditor – well, I guess you could say that there was some discretion, because it was the creditors who presented the biggest threat to the operation . . . that we tried to make sure got paid." *Id*. at p. 55:18-56:4. However, McCraw further testified that Takacs kept Tung "very informed about what was going on. So, it's not like we were doing something *against PEWC's instructions*." *Id*. at p. 56:14-18 (emphasis added).

McCraw's testimony is not helpful to the Plaintiffs, who have the obligation to raise a genuine issue of material fact regarding PUSA's control over the funds transferred to K&L, for several reasons. First, in addition to McCraw's admission that he did not know "any of the specifics" about

---

[4] For the reasons explained more fully hereinafter, McCraw's statements of belief are not competent summary judgment evidence. *See infra*, pp. 15-16.

**Memorandum Opinion and Order** Page 9

whose decision it was to make the payments to PUSA's creditors, and that PUSA wasn't "doing something against PEWC's instructions" when substituting creditors, McCraw never linked the creditor schedule preparation and payment process to the Transfer to K&L. And, it is only through the creditor schedule preparation and payment process that the Plaintiffs claim to have raised a question of fact regarding PUSA's control over PEWC's funds.

Second, McCraw has no personal knowledge about the specifics of the transfer at issue here – *i.e.*, the Transfer to K&L. McCraw testified that other than a conversation he had with Bob Wolin ("Wolin"), a K&L lawyer who explained why K&L needed to be paid, he had no further involvement in seeing that K&L was paid. Specifically, McCraw testified that after his conversation with Wolin, "I guess arrangements were made for PEWC to make a payment to do that." *Id*. at p. 18:16-17. When asked if he was "involved in that task" – *i.e.*, seeing that K&L got paid, McCraw answered "[n]o." *Id*. at p. 18:19. When asked who was involved, McCraw testified "I believe that Bob Wolin and Jack Takacs worked together to arrange for funding from PEWC to have that payment made." *Id*. at p. 67:8-10. When asked if Takacs could control the use of the funds, or say what accounts were going to be paid other than K&L, McCraw testified "I don't know whether he would have or not." *Id*. at p. 67:23. When asked if the million dollars would have been available to PUSA's other creditors if it had not been paid to K&L, McCraw testified "I can't speak to that." *Id*. at p. 91:19. Finally, McCraw testified that PUSA had no control over whether PEWC would fund monies to PUSA to pay K&L or other PUSA creditors – "that would have been PEWC's decision as to whether any funds came over here, whether it was to go to Kirkpatrick & Lockhart or to go to [PUSA]." *Id*. at p. 92:5-12. So, what is clear from the entirety of McCraw's testimony is that he has no personal knowledge about the specifics of the Transfer to K&L at all. In short, McCraw was not able to offer

any admissible evidence regarding PUSA's ability to exercise control over the funds paid to K&L by PEWC.

Finally, those parties McCraw identifies as having personal knowledge about the Transfer to K&L – *i.e.*, Takacs and Tung, both testified unequivocally that PUSA exercised no control over the funds paid to K&L by PEWC. For these reasons, McCraw's testimony does not raise a genuine issue of material fact that will defeat the Motion.

Turning next to Cheng's testimony, the Court concludes that it also fails to raise a genuine issue of material fact regarding the Transfer to K&L and PUSA's ability to control the transferred funds. The Plaintiffs initially point to Cheng's testimony that Tung failed to get PEWC board approval of his decision to continue funding PUSA. *See* Cheng deposition at p.18:16-25. Then, because Tung was also chairman of the PUSA board of directors, the Plaintiffs conclude that "[t]his testimony raises a fact question in that the trier of fact could easily find that Tung, even if he directed the payment to Defendant on his own without reference to the input from McCraw and Takacs, was acting on behalf of PUSA as its chairman, rather than on behalf of PEWC, whose board apparently was not aware of what he was doing." Plaintiffs' Brief at p. 6.

The Plaintiffs' attempt to tie these two facts together to create a genuine issue of material fact regarding PUSA's control over the funds PEWC transferred to K&L is unavailing. First, there is no evidence to suggest that Tung needed PEWC board approval of his decision to loan money to PUSA.[5] Second, there is no evidence in the record to suggest that Tung was acting as chairman of PUSA when he made the decision to pay K&L's outstanding legal bills. In fact, if he was acting as

---

[5] There is some evidence that PEWC board approval would have been required for it to make a capital contribution to PUSA. There is no evidence, however, that Tung ever thought PEWC was making a capital contribution.

**Memorandum Opinion and Order** **Page 11**

PUSA's chairman when he made the decision to transfer $1,000,000 to K&L, who authorized the transfer on PEWC's behalf? According to Cheng, PEWC's Executive Vice President at the time of the Transfer, there was no other person at PEWC who made the decision to fund PUSA's debts. When Cheng was asked why PEWC was paying "expenses or debts for PUSA," Cheng testified "I don't know the full detail of what's going on at PUSA at that time. The only person who knows is Tom Tung. I guess he make [sic] the decision [to] continue funding PUSA." Cheng deposition at p. 18:16-22. In short, based upon the entirety of the summary judgment record, the Court concludes that the Plaintiffs have failed to raise a genuine issue of fact regarding PUSA's control of the funds; the only evidence in the summary judgment record is that Tung was acting on PEWC's behalf when he caused $1,000,000 of PEWC's funds to be wire transferred to K&L on November 14, 2002 – no other person authorized the transfer on PEWC's behalf.

Second, Cheng's testimony fails to raise a genuine issue of material fact regarding PUSA's ability to control the funds transferred to K&L because Cheng admitted that he had no personal involvement in the transactions. *See id*. at p. 16:15-17. In short, Cheng was not able to offer any personal insights into the control issue surrounding the Transfer.

While K&L's summary judgment evidence regarding the control issue was succinct, it comes from the only two persons anyone identified as having personal knowledge about the Transfer to K&L from PEWC – *i.e.*, Tung and Takacs. The testimony of Tung and Takacs is unequivocal. The transferred funds belonged to PEWC, PUSA did not exercise any control over those funds, and PUSA could not have used those funds to pay other PUSA creditors or to fund its operations. Tung also testified that the funds were to be used for the sole purpose of paying K&L. On this record, the Plaintiffs have failed to raise a genuine issue of material fact regarding PUSA's ability to control the

funds PEWC wire transferred to K&L on November 14, 2002.

As noted earlier, the Plaintiffs must come forward with evidence sufficient to create a genuine issue of fact with respect to the Transfer being one of "an interest of the debtor in property." 11 U.S.C. § 547(b). The phrase "transfer of an interest of the debtor in property" is not statutorily defined, but most courts draw guidance from the definition of "property of the estate" set forth in § 541(a). *In re Moses*, 256 B.R. 641, 645 (10th Cir. BAP 2000). As the Fifth Circuit has stated,

> the primary consideration in determining if funds are property of the debtor's estate is whether the payment of those funds diminished the resources from which the debtor's creditors could have sought payment. Conversely, if funds cannot be used to pay the debtor's creditors, then they generally are not deemed an asset of the debtor's estate for preference purposes.[6]

*Southmark Corp. v. Grosz (In re Southmark Corp.)*, 49 F.3d 1111, 1117 (5th Cir. 1995). The Fifth Circuit also looks to whether the debtor has any control over the funds to determine whether the funds are property of the debtor's estate. *Coral Petroleum, Inc. v. Banque Paribas-London*, 797 F.2d 1351, 1361-62 (5th Cir. 1986) (stating that "the crucial fact is that [the debtor] did not control the money to the extent that it became property of its estate," and thus the 'earmarking' defense

---

[6] This widely-accepted formulation is somewhat imprecise. The phrase "property of the estate" is defined broadly, "consistent with the Bankruptcy Code's purpose to obtain the maximum possible recovery for and equitable distribution among creditors." *In re Pinetree, Ltd.*, 876 F.2d 34, 36 (5th Cir. 1989). Under such an expansive view, it seems likely that the debtor would have some legal or equitable interest in money lent to it. A more precise formulation might be that while the debtor has an interest in such property, a transfer of that interest does not diminish the pool of resources from which creditors could receive payment, and thus the policies underlying the preference section are not implicated and the transfer will not be deemed a preference.

Similarly, the notion that a transfer of funds pre-petition can be a transfer of property of the estate is also imprecise, in that the estate is not created until the bankruptcy filing. As one court noted,

> [t]he better way to conceptualize it is whether the transfer would have resulted in the estate being smaller upon its creation by operation of law, had all other relevant factors been present and all other relevant events occurred as they did, up to the bankruptcy filing. Though this phraseology is cumbersome, and not as immediately evocative as an unadorned reference to 'the estate,' it . . . avoids the use of an element that is technically impossible under the governing law.

*In re Nation-wide Exch. Serv. Inc.*, 291 B.R. 131, 147 n.18 (Bankr. D. Minn. 2003).

applied and no preference occurred).[7]

Here, the Court has found that the Plaintiffs have failed to raise a genuine issue of material fact that PUSA had control of the funds; thus, the Plaintiffs have failed to raise a genuine issue that the Transfer was a transfer of an "interest of the debtor in property." Therefore, the Plaintiffs' preference claim fails as a matter of law. *See* 11 U.S.C. § 547(b). Accordingly, K&L is entitled to a summary judgment in its favor.

**B.     Who will benefit from avoidance recoveries?**

At the hearing on the Motion, K&L admitted that its initial argument was premised upon a review of an earlier version of the Plaintiffs' joint plan of reorganization, which did not contain the provision that authorizes unsecured creditors to look to avoidance recoveries as a potential source of their Plan payments. However, as confirmed, the Plan does contain such a provision. Section 4.10.1 of the Plan specifically provides that unsecured creditors can look to avoidance recoveries if "Cash from the Escrow Account is insufficient to make the Distributions required by [Section 4.10.1 of the Plan]." *See* Plan at § 4.10.1.

In an effort to salvage their alternative basis for the Motion, K&L contends that the deposition testimony of Paul J. Weber, PUSA's general counsel, demonstrates that the $40,000,000 funded by PEWC under the Plan – *i.e.*, the "Cash from the Escrow Account," will be sufficient to pay unsecured creditors the "Distributions" required by Section 4.10.1 of the Plan. *See* Weber deposition at p.

---

[7] To say that the debtor lacks control over the funds and thus they do not become property of the estate is simply another way of saying that the debtor could not use the funds to pay other creditors, and thus the estate is not diminished. Either way, the courts rule that no preference has occurred, either because there has not been a transfer of an interest of the debtor in property or because the funds have been "earmarked." The "earmarking defense" is really an attack on an element of the plaintiff's case, rather than a true defense. Again, courts have used familiar, though imprecise, language to describe cumbersome concepts.

102:21-103:14. According to K&L, because Weber testified that he "believed" the $40,000,000 is going to be sufficient to pay unsecured creditors under the Plan, and therefore unsecured creditors will not be looking to avoidance recoveries for their Plan payments, K&L is entitled to summary judgment because the avoidance recoveries will not "benefit the estate" as required by § 550(a) of the Bankruptcy Code.

In response, the Plaintiffs contend that Weber's statement of belief is not competent summary judgment evidence. The Plaintiffs further contend that Weber's belief that the money in escrow may be sufficient to pay off the Plan obligations to unsecured creditors "does not eliminate the possibility that the money in the escrow account could prove to be insufficient when all claims and obligations are finally determined." Plaintiffs' Brief at p. 16. Accordingly, the Plaintiffs contend that there is a material fact question with regard to who will benefit from avoidance recoveries.

The Court agrees. Weber's "belief" about the adequacy of the escrowed funds to satisfy Plan obligations to unsecured creditors is not competent summary judgment evidence for at least two reasons. First, the basis for Weber's belief that the funds will be sufficient was not articulated – he simply testified that he thought they would be. As the court held in *Malek v. Martin Marietta Corp.*, 859 F. Supp. 458 (D. Kan. 1994), deposition testimony which lacks the foundation necessary for its admissibility is not competent summary judgment evidence.

Second, based on the limited summary judgment record, it is premature to know if the escrowed funds will be adequate to pay unsecured creditors without recourse to the avoidance recoveries. Weber's very brief testimony suggests that claims litigation is still ongoing. Until that litigation is concluded, and the amount of allowed unsecured claims has been determined, it is not possible to know if the cash in escrow will be sufficient to pay unsecured creditors in accordance with

the Plan. As the court held in *Castaneda v. Univ. of Tex. at San Antonio*, No. CIVASA01CA0590OG, 2003 WL 1797954 (W.D. Tex. Mar. 3, 2003), statements made during a deposition that reflect the deponent's subjective, if genuine, beliefs are insufficient summary judgment proof. *See also Palucki v. Sears, Roebuck & Co.*, 879 F.2d 1568 (7th Cir. 1989) (finding that deposition testimony that the deponent had a gut feeling that an employer was planning to fire a manager because of his age was insufficient to create a fact question concerning the motive for the manager's discharge).

The Plan clearly provides that unsecured creditors have a right to look to avoidance recoveries to complete their Plan distributions if the escrowed cash is not sufficient. Under this circumstance, recoveries from avoidance actions will "benefit the estate" within the meaning of §550(a) of the Bankruptcy Code and the Plaintiffs have standing to bring this action. Because Weber's testimony is insufficient to establish that the unsecured creditors will receive the full Plan distribution without recourse to the avoidance recoveries, a genuine issue of material fact exists regarding who will benefit from the avoidance recoveries. Accordingly, K&L is not entitled to summary judgment on the standing issue.

**V.    Conclusion**

It appears from the terms of the Plan that the Plaintiffs have standing to bring this action. And, on this record, K&L has failed to demonstrate the absence of evidence regarding the Plaintiffs' standing to bring this action. However, because the Plaintiffs failed to raise a genuine issue of material fact regarding the Plaintiffs' control over the funds transferred by PEWC to K&L, no interest of PUSA in property was transferred, and no preference payment to K&L was made as a matter of law. Accordingly, K&L is entitled to summary judgment on the Plaintiffs' preference claim.

A judgment consistent with this Memorandum Opinion and Order will be entered separately.

**SO ORDERED**.

### End of Order ###